MARKUS W. LOUVIER, ISB #8990
SCOTT A. FLAGE, ISB #9999
Evans, Craven & Lackie, P.S.
818 W. Riverside, Ste. 250
Spokane, WA 99201
Telephone: (509) 455-5200
Fax (509) 455-3632

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| SAPPHIRE HOSPITALITY INVESTMENTS, LLC, a foreign limited liability company, | ) ) ) ) | No. |
| Plaintiff, | ) ) | **COMPLAINT FOR DAMAGES** |
| vs. | ) ) ) | **DEMAND FOR JURY** |
| OREGON MUTUAL INSURANCE COMPANY, a foreign corporation, | ) ) ) | |
| Defendant. | ) ) ) ) ) | |

Plaintiff Sapphire Hospitality Investments, LLC, by and through its attorneys of record, Evans, Craven & Lackie, P.S., hereby alleges as follows:

## I. PARTIES AND JURISDICTION

1.    Plaintiff Sapphire Hospitality Investments, LLC, ("Sapphire Hospitality") is, and was at all relevant times, a foreign limited liability company

COMPLAINT FOR DAMAGES - Page 1

formed under the laws of Wyoming, with its principal place of business at 3120 N & South Hwy, Lewiston, ID 83501. Sapphire Hospitality has paid all licenses, fees, and taxes due the State of Idaho and has otherwise fulfilled all conditions precedent necessary to maintain this action.

2.      Upon information and belief, Defendant Oregon Mutual Insurance Company ("Oregon Mutual") is, and was at all relevant times, a foreign corporation organized under the laws of Oregon, with its principal place of business located at 400 NE Baker Street, McMinnville, OR 97128. Oregon Mutual issued the insurance policy at issue in this litigation.

3.      At all times material hereto, Oregon Mutual was and is a foreign insurance company authorized to and transacting business in Nez Perce County, Idaho. Oregon Mutual is subject to the laws and regulations of the State of Idaho.

4.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as there is complete diversity and the damages in this matter exceed $75,000.00.

5.      Venue is appropriate in this district as a substantial part of the events or omissions giving rise to this Complaint occurred in Nez Perce County, Idaho.

## II.      <u>FACTUAL ALLEGATIONS</u>

6.      Plaintiff Sapphire Hospitality re-alleges the foregoing allegations as if fully set forth herein.

COMPLAINT FOR DAMAGES - Page 2

7.     Sapphire Hospitality is the owner of real property located at 3120 N and S Highway, Lewiston, ID 93501-9690, wherein Sapphire Hospitality operates a Super 8 by Wyndham hotel under a franchise agreement ("the Hotel").

8.     Oregon Mutual issued a Businessowners Protector Insurance Policy, Policy No. BSP 354394, from April 30, 2020, to April 30, 2021, which provided certain coverage on the Hotel including coverage for property damage, contents, and loss of business income.

9.     On or about April 11, 2021, a covered fire loss occurred at the Hotel which severely damaged the Hotel. Sapphire Hospitality reported the loss to Oregon Mutual shortly thereafter and retained Sunpoint Public Adjusters, Inc. to represent Sapphire Hospitality in the claim (hereinafter collectively referred to as "Sapphire"). Oregon Mutual retained independent adjuster Scott Hoffman from Intermountain Claims, Inc., to assist in adjusting Sapphire Hospitality's claim.

10.    On April 20, 2021, Oregon Mutual sent Sapphire an email in part acknowledging Sapphire needed to "re-open and operate again right away" but also blaming Sapphire because "no active mitigation has been employed" which has "likely exacerbated the claim substantially due to a lack of any proper fire or water mitigation being employed." At this point, Oregon Mutual had not inspected the property, but was baselessly accusing Sapphire of failing to mitigate and protect the covered property.

COMPLAINT FOR DAMAGES - Page 3

11.    Sapphire and Mr. Hoffman met at the Hotel on April 22, 2021, and April 23, 2021, to inspect the damage. During the meetings, Sapphire and Mr. Hoffman discussed the overall scope of repairs and the need to reopen the Hotel as soon as possible.

12.    Mr. Hoffman arranged for King Services to perform various emergency services and demolition services at the Hotel. Mr. Hoffman indicated that King Services was a preferred contractor for Oregon Mutual. While performing its demolition work, King Services failed to drain certain water pipes at the Hotel.

13.    Oregon Mutual also retained BC Engineers to provide a structural evaluation report for the Hotel. BC Engineers delivered its initial structural report on May 19, 2021.

14.    On June 25, 2021, Sapphire provided Oregon Mutual a detailed cost to repair estimate performed with Xactimate totaling $1,078,952.74. The foregoing repair estimate constituted a proof of loss which triggered Oregon Mutual's duty to investigate and determine its liability, but it failed to adhere to that duty.

15.    On June 27, 2021, Sapphire informed Oregon Mutual and Mr. Hoffman that architectural services were necessary to conclude which walls in the Hotel needed additional layers of drywall based upon discussions with the City of

COMPLAINT FOR DAMAGES - Page 4

Lewiston inspectors and fire officials. If the City of Lewiston required additional layers of drywall in various locations in the Hotel, it would cause a significant increase in framing and the overall cost to repair.

16.    On June 29, 2021, Mr. Hoffman responded to Sapphire and stated that "Oregon Mutual is using Belfor Property Restoration for a competitive bid," "will not be releasing [Belfor's] estimate at this time," and will "review Belfor's estimate to make it [sure] it is representative of the conditions at the loss location to include the areas of double drywall."

17.    On July 6, 2021, Sapphire provided Oregon Mutual with another cost to repair estimate from Disaster Response totaling $884,877.04.

18.    On July 26, 2021, Mr. Hoffman provided Sapphire with drawings from BC Engineers "to assist you in presenting to the City of Lewiston to obtain your building permit." However, Mr. Hoffman did not state whether Belfor's "competitive bid" would be released or whether Oregon Mutual intended to rely upon the same.

19.    On August 1, 2021, Sapphire sent Mr. Hoffman a letter informing and reiterating the fact that significant code upgrade issues required resolution such as the "involved designer will need to determine how many ADA rooms the building has, . . . determine if some additional rooms will be needed to comply with ADA

COMPLAINT FOR DAMAGES - Page 5

guidelines," and an engineer would not suffice for such determination. That letter also noted:

> We also acknowledge receipt of your email of 7/06/21. It appears that you are waiting for completion of the estimate via King Services prior to completion and/or release of the Belfor estimate while at the same time requesting a copy of our estimate? This would appear to be an inconsistent request. We are requesting at this time that the Belfor estimate be provided as Belfor Restoration has had sufficient opportunity to complete the estimate of repairs. Modifications can of course be made once the King Services invoice is established.

> We anticipate that the attached information and estimates will suffice as a rough order of magnitude. That is a rough projection designed to estimate the costs and time for the project. Once you have had the opportunity to review the attached information please contact me so we may discuss issuance of the initial ACV payments that would be required and/or reach an agreed value as to the total replacement cost value.

> As you may be aware both the labor market as well as the material market has undergone extraordinary pricing pressure of late. We anticipate that our estimate may require revisions on unit cost to account for demand surge pricing. To that end you will note that we are providing an estimate from both our office as well as Disaster Response. The total replacement cost value of the SunPoint estimate is currently established with a RVC in the amount of $1,078,952.74. The total RCV as currently contemplated via Disaster Response is in the amount of $884,877.04. We note there is substantial differences between the scope of the SunPoint and Disaster Response. SunPoint has currently accounted for a greater scope. Disaster Response has included valid sub-contractor bids.

COMPLAINT FOR DAMAGES - Page 6

> Typically and to assist in readily identifying various issues of significant concern we will complete a bid comparison worksheet. Unfortunately without the benefit of the Belfor/carrier estimate we are unable to complete this document at this time. This worksheet is helpful to reflect potential areas of discrepancy between Disaster Idaho, Belfor/carrier, as well as SunPoint estimate. We look forward to receipt of the Belfor estimate and providing our review of the Belfor estimate and overall observations of the independent estimates and providing an updated worksheet. . .

20.     On August 11, 2021, Mr. Hoffman finally provided the Belfor cost estimate as he "received permission to release" it. The Belfor cost estimate totaled $509,958.28 which indicated significant discrepancies in the scopes of repair and provided notice to Oregon Mutual that the bid was erroneous. It also noted Belfor inspected the Hotel on April 23, 2021 and the estimate was dated June 24, 2021. In other words, Oregon Mutual waited approximately a month and a half prior to providing its insured with Oregon Mutual's competing scope of repair.

21.     On September 10, 2021, Mr. Hoffman emailed Sapphire stating that "Oregon Mutual Insurance Company is unable to accept the estimate due to several concerns. . ." However, Oregon Mutual did not take any further substantive steps to investigate and determine its liability. Rather, it continued to place the onus of determining liability under the Policy on its insured, Sapphire Hospitality.

22.     Due to the seemingly obvious error of the Belfor cost estimate, Sapphire obtained yet another cost of repair estimate from K&G Construction,

COMPLAINT FOR DAMAGES - Page 7

LLC, to demonstrate Oregon Mutual/Belfor's error. On September 17, 2021, K&G Construction provided a scope of repair to "repair Fire Damage and Deep Clean walls, floors, and ceiling along with deodorizing the building. This includes a new roof and vinyl siding" for a total of $1,045,000.00.

23.    On September 20, 2021, Sapphire wrote to Mr. Hoffman inquiring "[a]s the accompanying [August 10, 2021] email is a partial denial, please confirm that Intermountain Claims has the authority to accept or reject claims in whole or in part. . ." Sapphire also identified various inconsistencies and errors in Oregon Mutual's position including that Belfor's estimate did not include the "significant costs for per diem, hotel costs and mileage driving costs. It is disingenuous that the carrier would secure a contractor from outside the area to provide an estimate for the Lewiston area and then not include all known costs." The letter also noted that Oregon Mutual failed to comment or respond to the July 6, 2021, Disaster Response cost of repair estimate stating that "[i]t would constitute a proof of claim as defined by any insurance regulatory agency however there is no discussion with respect to the value of this estimate and or the denial of this proof of claim. . ."

24.    Mr. Hoffman responded to Sapphire on September 24, 2021 stating that "ALL coverage determinations will be made solely by Oregon Mutual Insurance Company," feigning ignorance that "you and/or the insured have not submitted a Proof of Loss with a  demand for payment which would require a

COMPLAINT FOR DAMAGES - Page 8

response from Oregon Mutual Insurance Company within a specified time," and inquiring why "no repair activity appears to be taking place currently" when Oregon Mutual was aware it had not fully paid for repairs pursuant to the insurance policy and a design professional was required to obtain a building permit.

25.     Sapphire responded later that same day, September 24, 2021, reiterating it provided sufficient information to allow Oregon Mutual to investigate and determine the appropriate cost to repair. Sapphire also noted Oregon Mutual was taking various unreasonable positions such as claiming certain scopes of repair work in the estimates provided by Sapphire were too high but were actually lower than the same scope of work quoted by Belfor.

26.     On October 1, 2021, Oregon Mutual sent a letter to Sapphire refusing to accept the September 17, 2021, estimate from K&G Construction, LLC, because "[t]here is no information provided on the estimate that would allow Oregon Mutual or anyone else to perform a proper review or evaluation of their estimate." Oregon Mutual refused to investigate the foregoing estimate further, rather it again improperly placed the burden of investigating the claim on the insured Sapphire Hospitality. Oregon Mutual also stated that it hired a construction consultant firm, J.S. Held, LLC, from Jericho, New York to "assist in both reviewing the estimates you provided, as well as to assist all parties in determining both the agreed scope and true cost of repairs necessary." Oregon Mutual failed to

COMPLAINT FOR DAMAGES - Page 9

provide a reason why it refused to hire a construction consultant to assist in the claim for almost six months.

27.    On October 4, 2021, Sapphire emailed Oregon Mutual to express its concerns regarding Oregon Mutual's decision to engage the services of J.S. Held. Sapphire explained that J.S. Held's consultant was David Jess and Belfor had previously utilized Mr. Jess in preparing its cost of repair estimate. In other words, Oregon Mutual was using Mr. Jess to review Mr. Jess's own cost estimate.

28.    On October 20, 2021, Sapphire forwarded Oregon Mutual a proposal from Clever Fox Architecture ("Clever Fox") in the amount of $46,380.00. Clever Fox's proposal noted it was for a "code analysis to determine a detailed scope of repair work required by local adopted building codes to obtain building permits from the city of Lewiston" among other code issues including whether ADA upgrades were required.

29.    On October 21, 2021, Oregon Mutual responded to Sapphire stating that it had no information or documentation that architectural services were required for the repairs, and it required more information to "clearly" demonstrate the services of an architect versus "other professional services" such as an engineer or licensed general contractor were required. Oregon Mutual again put the onus of its investigation onto its insured, Sapphire, despite the fact it had retained its

COMPLAINT FOR DAMAGES - Page 10

"construction consultant firm" approximately one month prior and should have posed such questions directly to J.S. Held as part of its duty to investigate.

30.     On October 27, 2021, Oregon Mutual sent a letter to Sapphire stating that "John Smith" from the City of Lewiston commented that no additional code work would be required for the necessary repairs, thus, architectural services were not required. Mr. Smith did not inspect the property nor was he the onsite inspector for the Hotel.

31.     On November 1, 2021, Sapphire wrote directly to Oregon Mutual and attached a letter and email correspondence from a senior inspector from the City of Lewiston with current and prior written confirmation of code upgrade requirements for repairs at the Hotel which necessitated architectural services. Sapphire also demanded:

> We are again requesting that you honor the Clever Fox Architecture drafting fees so that these issues may be appropriately addressed. There is no indication that these costs are unwarranted as is the Carrier's current position, and no indication they would not be honored under the policy. In the event that the Carrier continues to maintain their current denial of these costs, please provide relevant policy language in support of the Carrier's current position.

32.     On December 7, 2021, Sapphire wrote a letter to Oregon Mutual, J.S. Held, and Mr. Hoffman requesting that Mr. Jess be removed from the file due to his inherent conflict and noting that J.S. Held's review of the Belfor estimate

COMPLAINT FOR DAMAGES - Page 11

identified many areas of disagreement. The letter also noted how Belfor's estimate was flawed as it utilized outdated price lists based upon Oregon Mutual's failure to timely provide the Belfor repair cost estimate to Sapphire among other flaws. Finally, Sapphire addressed Oregon Mutual's claim that it has not received any documentation to note the necessity of architectural services:

> As you will recall, we had provided an inquiry on 11/01/21 and support regarding architect costs. It does not appear we have received the courtesy of a response to date. That request was made in response to the Carrier letter dated 10/21/21. The Carrier letter states:

> "Unfortunately Oregon Mutual has received no information or documentation that indicates the services from any architect are necessary int his instance."

> That statement is factually incorrect.

> Concerning the utilization of an architect, this information was reported to the Independent Adjuster not later than June 2021 and confirmed on July 7th, 2021, via detailed information from Jeff Wolfe with the City of Lewiston. It is disingenuous to assert that this is an excluded element based on information subsequently obtained on October 26th, 2021, via J.S. Held. That is a period of 122 days before providing any comment on the need for an architect. The potential scope concern had not previously been outlined by the Carrier or the Carrier's representative. We anticipated that based on this lack of response to the information provided, the Carrier fully agreed on the architect's involvement and defined scope. Based on the information from the City of Lewiston, and the failure of the Carrier to address this in a timely fashion, the insured proceeded, in a reasonable [good] faith effort, to complete known project requirements. The client

COMPLAINT FOR DAMAGES - Page 12

Sapphire Hospitality has entered into a service contract previously provided to your office.

. . .

You will note that we are 240 days from the date of loss. Currently, the structure values are no closer to resolution. The Carrier and their agents have made only nominal valuation charges from 06/24/21 forward a period of 160 days during which significant support and documentation have been provided [the Sapphire]. . .

33.     The December 7, 2021 correspondence from Sapphire also requested that Oregon Mutual "formally accept or reject the estimate/'Proof of Claim' as presented via Disaster Idaho and provide the policy language for the basis of the denial," "respond to our letter of 11/01/21 regarding architectural fees," "that significant estimate elements have been omitted from the Carrier's valuation through the use of 'open' or 'as incurred' and that no effort has been made to establish these costs. Please provide the basis for this approach under the policy or at law," and to "confirm that the Carrier will not honor any additional architect costs as required" among other requests.

34.     On December 16, 2021, Oregon Mutual sent a letter to Sapphire wherein Oregon Mutual refused to directly respond to the requests posed by Sapphire's December 7, 2021, letter. However, Oregon Mutual did confirm it had no intention of responding to the Disaster Idaho estimate/Proof of Claim because "ID Statutes relating to Proof of Claim clearly state that no claim need be

COMPLAINT FOR DAMAGES - Page 13

considered or allowed if it does not contain certain information, and at any time we can request additional information or evidence. . ."

35.    On or about February 25, 2022, the Hotel suffered a water loss event caused by King Service's failure to drain water from pipes in the damaged portion of the Hotel. Sapphire incurred costs of $73,039.78 from Disaster Response in remediating the loss. Sapphire tendered those costs to OM and its subsequent insurer, American Empire Surplus Lines Insurance Company ("American Empire") due to OM's preferred contractor's, King Services, failure to properly perform its scope of work.

36.    On March 23, 2022, Oregon Mutual sent a letter to Sapphire representing that the insurance policy "does not owe for material matching, etc." and that was "one of the reasons we had not yet been able to reach an agreed scope or cost of repairs in the past." Oregon Mutual was fully aware of the franchise agreement between Sapphire Hospitality and Super 8 Worldwide, Inc. required the Hotel to have various common construction elements and mismatching material was not permitted among other requirements. Oregon Mutual was also fully aware that Sapphire was required to maintain the hotel in good standing condition. Oregon Mutual also feigned ignorance as to whether the services of an architect were necessary because it claimed Oregon Mutual had not been provided correspondence or documentation that indicated such services were required,

COMPLAINT FOR DAMAGES - Page 14

notwithstanding being provided such information in Sapphire's prior correspondence including its November 1, 2021 letter.

37.    On April 27, 2022, Sapphire provided Oregon Mutual with Clever Fox's drawings and requested payment for Clever Fox's services. At the time, Oregon Mutual still contended it required additional information regarding the necessity of Clever Fox's services.

38.    On June 30, 2022, Sapphire provided Oregon Mutual with sections from the 2019 IBC and Idaho Code to confirm architectural services were required to repair the property.

39.    On June 30, 2022, Oregon Mutual informed Sapphire that Oregon Mutual would not provide coverage for the February 25, 2022 water loss event at the Hotel.

40.    Oregon Mutual failed to inquire or investigate further until July 11, 2022, when its agent, J.S. Held, finally contacted and discussed the architectural services requirement with John Smith, the City of Lewiston building official. Mr. Smith confirmed that architectural services were indeed required for the necessary repairs to the Hotel.

41.    Instead of accepting Mr. Smith's confirmation that architectural services were required and pay the outstanding Clever Fox invoices, Oregon Mutual claimed it needed itemized statements of an engineer Clever Fox utilized

COMPLAINT FOR DAMAGES - Page 15

to create its drawings. Inexplicably, Oregon Mutual claimed the need to scrutinize the total invoice from Clever Fox even though the invoiced amount was more than $10,000.00 less than the proposal Oregon Mutual received approximately ten (10) months prior in October 2021.

42.    On August 8 and August 11, 2022, Oregon Mutual was provided notice that Clever Fox filed a claim of lien and was threatening to file a lawsuit to foreclose on the Hotel due to Oregon Mutual's intentional, reckless, and grossly negligent delay and failure to pay the required benefits of the insurance policy.

43.    Oregon Mutual continued to refuse to pay Clever Fox and resolve the claim of lien. Oregon Mutual even instructed Sapphire to utilize funds paid by Oregon Mutual earmarked for other scopes of repair in the Hotel. In other words, Oregon Mutual put Sapphire in the impossible position to choose whether to use funds already earmarked for specific areas of repair on the Hotel to avoid foreclosure and be left without sufficient funds per the insurance policy to repair the Hotel or allow the lien to be foreclosed. Allowing the foreclosure lawsuit to proceed would threaten Sapphire Hospitality's franchise agreement and status and caused a default in Sapphire's loan for the Hotel.

44.    On December 1, 2022 Disaster Response demanded payment from Sapphire and threatened to file a lien for its work performed to remediate the damage from the February 25, 2022 water loss event at the Hotel. Disaster

COMPLAINT FOR DAMAGES - Page 16

Response eventually filed a lien against the Hotel which threatened the Franchise Agreement and threatened to place loan on the Hotel into a default.

45.     Sapphire was forced to pay Disaster Response directly for its work to remediate the February 25, 2022, water loss damages. On December 15, 2022, Disaster Response released its claim of lien on the Hotel.

46.     On January 5, 2023, Oregon Mutual was notified that Clever Fox filed a Complaint on December 20, 2022 to foreclose the lien. Sapphire Hospitality demanded that Oregon Mutual pay Clever Fox's outstanding amount claimed and obtain a release of the claim of lien or Sapphire Hospitality would be forced to take action to prevent further harm to itself.

47.     Oregon Mutual responded on January 9, 2023, by refusing the satisfy the Clever Fox invoice and again stating it has "already provided Sapphire with more than sufficient funds in which to pay the Clever Fox invoice, and there is no reasonable basis for this demand."

48.     On January 11, 2023, American Empire wrote to Sapphire to deny the claim for reimbursement of the Disaster Response costs for the February 25, 2022, water loss damages. American Empire noted in part, "the efficient proximate cause of the loss was the April 11, 2021 fire."

49.     Sapphire Hospitality was eventually forced to settle the lawsuit and claim of lien recorded by Clever Fox for $45,000.00, an amount much higher than

COMPLAINT FOR DAMAGES - Page 17

Clever Fox's original invoiced amount. The settlement was required to protect Sapphire Hospitality's status as a franchisee and prevent a default on the mortgage for the Hotel.

50.    Sapphire Hospitality has incurred significant damages in the form of lost profits and business income among other items based upon Oregon Mutual's acts and omissions, failure to timely respond to communications, failure to investigate, refusal to evaluate information provided by Sapphire in good faith, and delay and failure to pay policy benefits.

## III.    FIRST CAUSE OF ACTION – BREACH OF CONTRACT

51.    Plaintiff Sapphire Hospitality re-alleges the foregoing allegations as if fully set forth herein.

52.    Sapphire Hospitality is entitled to recover insurance policy benefits from Oregon Mutual pursuant to the contract of insurance that Sapphire Hospitality purchased from Oregon Mutual.

53.    Oregon Mutual materially breached the insurance contract by its actions and/or omissions described herein.

54.    Oregon Mutual's acts and/or omissions as described herein constitute a material breach of the insurance contract and Sapphire Hospitality has incurred damages as a direct and foreseeable result in an amount to be proved at trial.

## IV.    SECOND CAUSE OF ACTION – BAD FAITH

COMPLAINT FOR DAMAGES - Page 18

Evans, Craven & Lackie, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

55.     Plaintiff Sapphire Hospitality re-alleges the foregoing allegations as if fully set forth herein.

56.     Oregon Mutual's acts and omissions as described herein and other claims handling practices violate the requisite duties owed to its insured, Sapphire Hospitality.

57.     Oregon Mutual violated I.C. § 41-1329 in evaluating and adjusting Sapphire Hospitality's claims for benefits under the policy, intentionally and unreasonably denied or delayed adjustment of the claim and payment of all benefits due under the policy by engaging in unfair and unreasonable behavior including, but not limited to:

       a.     Misrepresented pertinent facts and insurance policy provisions;

       b.     Failed to acknowledge and to act reasonably promptly on pertinent communications with respect to a claim;

       c.     Failed to adopt or implement reasonable standards for prompt investigation of a claim;

       d.     Refused, despite repeated requests, to pay claims which any reasonable investigation would have demonstrated were payable;

       e.     Failed to affirm or deny coverage within a reasonable time of being advised of the loss;

COMPLAINT FOR DAMAGES - Page 19

f.    Failed to attempt to effectuate prompt, fair, and equitable settlement of a claim after having determined that liability was reasonably clear;

g.    Left the insured with no choice but to either forego policy benefits or retain a lawyer and initiate litigation;

h.    Delayed investigation and payment of claims pending obtaining information which Sapphire Hospitality and others had already supplied, and made no reasonable effort to pursue information made available to it, on more than one occasion, by Sapphire Hospitality;

i.    Failed to provide the insured with a reasonable explanation of the basis in the policy in relation to the facts or applicable law for delaying or refusing payment of the known or reasonably ascertainable losses.

58.    In adjusting and handling all aspects of the claims arising out of the fire loss on or about April 11, 2021, at the Hotel, Oregon Mutual committed the tort of bad faith. Oregon Mutual intentionally and unreasonably denied or withheld payments of the claim arising out of the fire loss described herein and arising out of the transaction of adjusting the claims relating thereto under the policy. The claims were not fairly debatable. The denial or failure to pay was not the result of a good faith mistake. The resulting harm is not fully compensable by contract damages.

COMPLAINT FOR DAMAGES - Page 20

59.     The actions of Oregon Mutual's agents or employees in denying or delaying adjustment of the claim and payment of the benefits due under the policy are not the result of any good faith mistake.

60.     As a direct and proximate result of the actions of Oregon Mutual's agents or employees, Sapphire Hospitality has suffered unnecessary and substantial damages, including lost business income, harm to its credit, and issues with its mortgagor and franchisor.

61.     Oregon Mutual's conduct in adjusting and handling the claim which is the subject matter of this suit and in committing the acts and omissions described herein and other acts and omissions which will be proven at trial constituted and constitute conduct which is oppressive, wanton, and/or outrageous, and an extreme deviation from reasonable standards of conduct, all of which entitle Sapphire Hospitality to punitive damages. Sapphire Hospitality should be permitted to amend this Complaint to make a claim against Oregon Mutual for punitive and exemplary damages and include a prayer for relief seeking punitive damages.

63.     Sapphire Hospitality demands a jury trial on all matters.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff Sapphire Hospitality Investments, LLC, seeks the following relief:

1.      For an award of all damages suffered;

COMPLAINT FOR DAMAGES - Page 21

2.      For an award of its fees and costs pursuant to I.C. § 41-1839 and 12-120(3);

3.      For an award of prejudgment interest as allowed by law; and

4.      For such other and further relief as the Court deems fair, just and equitable.

DATED this 5th day of April, 2023

EVANS, CRAVEN & LACKIE, P.S.


_____s/ Markus W. Louvier_____
MARKUS W. LOUVIER, #8990
SCOTT A. FLAGE, #9999
Attorneys for Plaintiff
818 W. Riverside Ave, Ste. 250
Spokane, WA 99201
Telephone: (509) 455-5200
Fax: (509) 455-3632
Email: sflage@ecl-law.com

COMPLAINT FOR DAMAGES - Page 22