UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SAPPHIRE HOSPITALITY INVESTMENTS, LLC, a foreign limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>OREGON MUTUAL INSURANCE COMPANY, a foreign corporation,<br><br>Defendant. | Case No. 3:23-cv-00146-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court is Plaintiff Sapphire Hospitality Investments, LLC's Motion to Compel Discovery and Award Attorney Fees (Dkt. 41). The Court finds oral argument would not significantly aid its decision-making process and decides the motion on the parties' briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons discussed below, the Court grants Sapphire's motion.

### I.   BACKGROUND

Plaintiff Sapphire Hospitality Investments, LLC, ("Sapphire") owns and operates a hotel in Lewiston, Idaho (Dkt. 1 at ¶ 7). Defendant Oregon Mutual Insurance Company ("Oregon Mutual") issued a "Businessowners Protector Insurance Policy" to Sapphire with a policy period from April 30, 2020, to April 30, 2021 (*id.* at ¶ 8). On April 5, 2023, Sapphire filed the action against Oregon Mutual, alleging breach of contract and bad faith based on Oregon Mutual's

conduct in adjusting and handling the claims arising out of a fire loss that occurred in April 2021 at Sapphire's hotel (Dkt. 1 at 18-22). Oregon Mutual has denied Sapphire's allegations, including that Oregon Mutual denied Sapphire's claim (Dkt. 11 at 10-11; Dkt. 44 at 6).

On March 8, 2024, Sapphire served its first set of Interrogatories and Requests for Production on Oregon Mutual (Dkt. 43 at 2). The following discovery requests are at issue:

> INTERROGATORY NO. 9: From 2018 to the present, state whether you received any formal or informal customer complaints regarding Mark Metume, Bob Bararo, Steve Flabel, Heather Slattum, or any other claims adjusters or supervisors involved in handling the subject claim and/or their handling of insurance claims. For each such complaint, state: the date the complaint was received; the nature of the complaint with reasonable particularity; the name and telephone number of the complaining party; what actions, if any, were taken by you to investigate the complaint; and the present status, or disposition, of each complaint.
>
> INTERROGATORY NO. 10: From 2018 to the present, state whether you or any of your employees, agents, or supervisors disciplined or reprimanded Mark Metume, Bob Bararo, Steve Flabel, Heather Slattum, or any other claims adjusters or supervisors. If so, state the conduct for which they were disciplined, the nature of the disciplinary action, and the date of the disciplinary action.
>
> REQUEST FOR PRODUCTION NO. 19: Produce a true, correct, and complete copy of any and all documents relating to cost containment, benefits, perks, bonuses, incentives, and quotas for claims handling that relate to any and all claims handling representatives and supervisors involved in this claim and that were in effect at the time the claim at issue in this case was evaluated.
>
> REQUEST FOR PRODUCTION NO. 22: If it is in your possession, produce a true, correct, and complete copy of the resume and/or curriculum vitae on file for Mark Metume, Bob Bararo, Steve Flabel, Heather Slattum, or any other claims adjusters, supervisors, or other claims handling representatives involved in this claim.

(Dkt. 42 at 2-3).

On April 22, Oregon Mutual responded to Sapphire's requests with objections on multiple grounds (Dkt. 43 at 2). Oregon Mutual argues the requests seek information that is irrelevant and not proportional, seek third parties' confidential and personal information, and are unduly

burdensome and designed to annoy, embarrass, and harass Oregon Mutual employees (Dkt. 43-1 at 2-5). Meanwhile, Sapphire argues Oregon Mutual's responses were "incomplete, evasive, and contained improper objections" (Dkt. 43 at 2). Despite meeting and conferring from October 30, 2024, through February 25, 2025, including a discovery conference with the Court's staff; the parties were unable to reach an agreement, and Sapphire moves to compel Oregon Mutual to respond.

## II. LEGAL STANDARD

Parties may obtain discovery as to any nonprivileged matter that is relevant to any party's claim and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). In general, a party seeking discovery may move for an order compelling production if an opposing party has failed to answer an interrogatory, participate in a deposition, or produce requested documents. *See* Fed. R. Civ. P. 37(a)(3). The party seeking to compel discovery bears the initial burden of showing that the request is relevant and proportional. *See Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995). If the moving party establishes that the information sought is discoverable, "[t]he party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002).

If the motion to compel is granted, "the court *must*, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion" to pay the movant's attorney fees and costs unless the court finds any of the following: (1) The movant did not attempt to obtain the disclosure in good faith without court action before filing its motion; (2) the opposing party's

nondisclosure was substantially justified; or (3) other circumstances make an award unjust. *See* Fed. R. Civ. P. 37(a)(5) (emphasis added).

### III. ANALYSIS

#### A. Motion to Compel

##### 1. Relevance of the Discovery Requests

Oregon Mutual contends that Sapphire's discovery requests seek irrelevant information (Dkt. 44 at 5). Oregon Mutual argues that Sapphire provides no Idaho authority supporting the relevance of poor claims handling information in bad faith claims and that the information is not relevant to a bad faith claim under Idaho law. In support, Oregon Mutual cites *Cedillo v. Farmers Ins. Co.*, 408 P.3d 886, 892-93 (Idaho 2017) (Dkt. 44 at 6-7).

Sapphire contends that documents addressing the qualifications, work/disciplinary history, and basis for compensation for Oregon Mutual's employees involved in this claim are directly related to Sapphire's causes of action for the bad faith claim and wrongful denial (Dkt. 42 at 6). Sapphire further argues that the discovery requests regarding employee information relates directly to Oregon Mutual's employees and agents who are material fact witnesses in this case (*id.*).

To recover on a bad faith claim under Idaho law, the insured must show: "1) the insurer intentionally and unreasonably denied or withheld payment; 2) the claim was not fairly debatable; 3) the denial or failure to pay was not the result of a good faith mistake; and 4) the resulting harm is not fully compensable by contract damages." *Parks v. Safeco Ins. Co. of Illinois*, 376 P.3d 760, 766 (Idaho 2016) (quoting *Robinson v. State Farm Mut. Auto. Ins. Co.*, 45 P.3d 829, 832 (Idaho 2002)). Courts in the Ninth Circuit have routinely found that personnel files are relevant and discoverable in bad faith cases. *See, e.g.*, *Am. Auto. Ins. Co. v. Hawaii Nut & Bolt, Inc.*, No. CV

15-00245 ACK-KSC, 2017 WL 80248, at *5 (D. Haw. Jan. 9, 2017) (citing *Gowan v. Mid Century Ins. Co.*, 309 F.R.D. 503, 512 (D.S.D. 2015)) (explaining personnel files may reveal an inappropriate reason or reasons for defendant's action with respect to the plaintiff's bad faith claims); *Pickett v. Liberty Mut. Ins. Co.*, No. 2:20-cv-0426-TOR, 2021 WL 3560841, at *5 (E.D. Wash. Aug. 11, 2021) (same).

Prior customer complaints about Oregon Mutual employees who are involved in handling the subject claim may show whether Oregon Mutual acted intentionally in its handling of Sapphire's claim. *See Bryant v. Colonial Sur. Co.*, No. 1:13-CV-00298-BLW, 2015 WL 672314, at *3 (D. Idaho Feb. 17, 2015) ("[E]vidence that an insurer had acted with similar bad faith in the past would tend to show its deliberateness or willfulness in handling the Trust's claim here."). The Court finds the requested information is relevant to Sapphire's claim because previous customer complaints about the employees who are involved in handling its claim may show the deliberateness in claim handling conduct, and relatedly, whether Oregon Mutual acted intentionally and unreasonably.

Likewise, the disciplinary history of Oregon Mutual's employees is relevant because it may establish Oregon Mutual's overall compliance with insurance regulations and whether the alleged denial was intentional and unreasonable. While Oregon Mutual cites to *Cedillo* in support of the contention that poor claims handling is irrelevant to a claim of bad faith under Idaho law, the Idaho Supreme Court in *Cedillo* stated that "poor claims management *standing alone* is not enough to make out a bad faith claim." 408 P.3d at 892 (emphasis added). Although poor claims management *standing alone* is insufficient to recover on a bad faith claim under Idaho law, Sapphire does not represent that evidence of poor claims management, without more, will prove its claim against

**MEMORANDUM DECISION AND ORDER - 5**

Oregon Mutual. The information regarding Oregon Mutual's employee conduct (such as employee disciplinary history) is still relevant, at least in part, to Sapphire's bad faith claims. *See Pickett*, 2021 WL 3560841, at *5; *see also Pac. Coast Surgical Ctr., L.P. v. Scottsdale Ins. Co.*, No. 218CV03904PSGKSX, 2019 WL 1199024, at *2 (C.D. Cal. Mar. 11, 2019).

Additionally, information about the qualifications of the Oregon Mutual employees who handled Sapphire's insurance claim is relevant in a bad faith action. *See McCall v. State Farm Mut. Auto. Ins. Co.*, No. 216CV01058JADGWF, 2017 WL 3174914, at *10 (D. Nev. July 26, 2017). Sapphire requests copies of the "resume and/or curriculum vitae on file" for four named employees and other employees involved in the disputed claim. Sapphire does not request the information of unrelated employees or information that does not pertain to those employees' qualifications. Thus, the information requested by Sapphire in Interrogatory No. 9, Interrogatory No. 10, and Request for Production No. 22, regarding customer complaints, disciplinary action, and employee qualifications is relevant.

Sapphire's request for the cost containment, benefits, perks, bonuses, incentives, and quotas is also relevant to Sapphire's claim because it can help determine whether Oregon Mutual encourages bad faith behavior, such as payment withholding and claim denial. *See Hover v. State Farm Mut. Auto. Ins. Co.*, No. CV-13-05113-SMJ, 2014 WL 4239655, at *3 (E.D. Wash. Aug. 26, 2014) ("Again, notices of commendation, warning, discipline, and/or termination and incentive programs, bonus structures, and other similar information could help Plaintiff determine whether Defendant encourages its employees to undervalue claims and thereby compel litigation to recover actual amounts due."). Because the information requested would help Sapphire determine whether

Oregon Mutual incentivized or intended the alleged denial to occur, the information requested in Request for Production No. 19 is also relevant.

### 2. Proportionality of the Discovery Requests and Employee Privacy Concerns

Oregon Mutual also argues that Interrogatory No. 9 and Interrogatory No. 10 are vague, broad, and "request[] information about Oregon Mutual employees without regard to whether they were meaningfully involved in the handling of Sapphire's insurance claim" (Dkt. 44 at 8-9). Oregon Mutual makes a similar objection to Request for Production No. 22, stating it is overly broad and "requests information about Oregon Mutual employees without regard to whether they were meaningfully involved in the handling of Sapphire's insurance claim" (Dkt. 44 at 11). Further, Oregon Mutual argues Sapphire's discovery requests expose nonparty employees to undue burden, embarrassment, and annoyance (Dkt. 44 at 5-6).

Sapphire replies that these requests are narrowly tailored to the "portions of the file relating to the adjuster's performance, discipline, training, and the like" and to "the key adjusters working on Sapphire's claim"; Sapphire has no interest in obtaining private employee information; the requested information directly relates to the Oregon Mutual employees who are material fact witnesses in this case due to their employment and work on Sapphire's claim; Oregon Mutual's duty to investigate Sapphire's claim did not end when Sapphire submitted its claim on April 11, 2021, so the timeframe of requested information should not be limited to this date either; and Oregon Mutual has relied upon boilerplate objections, which are improper and insufficient to assert a privilege. (Dkt. 46 at 5-6, 9).

The Court finds Sapphire's requests are not vague or broad. Rather, Sapphire's requests are limited to employee information regarding Mark Metume, Bob Bararo, Steve Flabel, Heather

Slattum, or any other claims adjusters or supervisors involved in handling Sapphire's claim (Dkt. 42 at 2-3). Further, the date range for the requested at issue Interrogatories is from 2018 to the present (Dkt. 42 at 2-3). Given the importance and relevance of the information requested, the restricted timeframe, and the specific individuals identified in Sapphire's Interrogatories and Requests for Production, these discovery requests are reasonably limited and proportional to the needs of the case.

While the Court recognizes Oregon Mutual's concerns regarding the privacy of its employees, the requested personnel files are nevertheless discoverable because the requests are limited to information that is pertinent to the asserted claims and not for private and personal information. *See Am. Auto. Ins. Co.*, 2017 WL 80248, at *5 ("The Court acknowledges that privacy concerns are implicated in the production of personnel files. However, under the circumstances, and given the claims asserted by Safeway, the personnel files for those individuals involved in the handling of HNB's insurance claim are relevant and proportional to the needs of the case, and are thus discoverable."). Therefore, Sapphire's requests regarding employee information are relevant and proportional and thus discoverable.

Sapphire's Request for Production No. 19 is likewise proportional to the needs of this case. This request is limited to specific documents regarding cost containment, benefits, perks, bonuses, incentives, and quotas for claims handling that relates to the claims handling representatives and supervisors that were involved in this claim and that were in effect at the time this claim was evaluated. The information requested is relevant to the case, specific, and sufficiently limited in timeframe and scope to be proportional to the needs of this case. Thus, the at issue discovery requests are both relevant and proportional to the needs of the case.

Moreover, "boilerplate objections or blanket refusals inserted into a response to a Rule 34 request for production of documents are insufficient to assert a privilege." *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005). Here, Oregon Mutual has not provided an adequate objection to assert a privilege. Although Oregon Mutual objects to Sapphire's requests on various grounds, the objections are repetitive and boilerplate with much of the same language being used within each objection. Oregon Mutual has not adequately clarified, explained, and supported its objections, including how the requested information is a violation of Oregon Mutual's employees' privacy or how these discovery requests would subject employees to undue burden, embarrassment, and annoyance. Therefore, as Sapphire's discovery requests are relevant and proportional to the needs of the case and Oregon Mutual has not met its burden in showing that the requests should not be allowed, the Court grants Sapphire's Motion to Compel.

Oregon Mutual requests that, should the Court permit discovery on employee-related information, "any information produced in response to this interrogatory should be subject to a protective order preventing the use of the information and/or documents for purposes other than this litigation, and requiring protected documents either be filed under seal or provided to the parties and the Court in camera" (Dkt. 44 at 9-11). Under Fed. R. Civ. P. 26(c), a party may move for a protective order limiting public disclosure of discoverable information. The party opposing public disclosure of documents produced during discovery has the burden of providing good cause, which requires a showing that specific prejudice or harm will result if the protective order is not granted. *In re Roman Cath. Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011);

**MEMORANDUM DECISION AND ORDER - 9**

*see also* Fed. R. Civ. P. 26(c) (explaining good cause exists to avoid annoyance, embarrassment, oppression, undue burden, or expense).

Here, neither party has filed a motion for a protective order in this case nor submitted proposed protective order language. Oregon Mutual generally argues that Sapphire's requests expose its employees to "undue burden, embarrassment and annoyance" (Dkt. 44 at 6, 7). Otherwise, Oregon Mutual does not explain what harm or prejudice will result absent a protective order. Accordingly, the Court will not enter a protective order on its own motion.

**B.     Motion for Attorney Fees**

Sapphire requests the Court award reasonable expenses, including attorney fees against Oregon Mutual for the costs of bringing this motion to compel (Dkt. 41). Because the Court has granted Sapphire's motion to compel in full, the Court is required to impose reasonable costs in making the motion, unless (1) Sapphire did not attempt to obtain the disclosure in good faith without court action prior to filing its motion, (2) Oregon Mutual's nondisclosure was substantially justified, or (3) other circumstances make an award unjust. *See* Fed. R. Civ. P. 37(a)(5)(A). The Court finds none of these exceptions apply. Accordingly, the Court finds it appropriate to award Sapphire the reasonable expenses incurred in bringing its motion to compel. Sapphire shall submit a request for fees and a supporting affidavit, to which Oregon Mutual may file a response. Pending Sapphire's supporting documentation, the Court reserves ruling on its motion for attorney fees.

**IV.     ORDER**

**IT IS ORDERED that:**

1.     Plaintiff Sapphire Hospitality Investments, LLC's Motion to Compel Discovery and Award Attorney Fees (Dkt. 41) is **GRANTED in part** and **RESERVED in part**. No later

than **twenty-one (21) days** after the Court's issuance of this order, Defendant Oregon Mutual Insurance shall respond to Plaintiff's interrogatories and requests, consistent with the Court's order. Additionally, no later than **twenty-eight (28) days** after the issuance of this order, Plaintiff shall submit a request for fees and a supporting affidavit explaining the costs for bringing the instant motion. No later than **twenty-one (21) days** after filing this request, Defendant may file a response to Plaintiff's request.

DATED: August 04, 2025

_Amanda K. Brailsford_
Amanda K. Brailsford
U.S. District Court Judge